**Roger CLEMONS, Plaintiff–Appellant,**

v.

**Randall WALLER, a Action Autoliner d/b/a Action Research Group, Karl Hall, and Meridian Resources & Investigations, Defendants–Appellees.**

No. 02–5342.

United States Court of Appeals, Sixth Circuit.

Nov. 13, 2003.

Peter T. Skeie, Attorney at Law, Nashville, TN, for Plaintiff–Appellant.

Karl Hall, pro se, Franklin, TN, for Defendant–Appellee.

Before GIBBONS and SUTTON, Circuit Judges, and TARNOW, District Judge.*

* The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District

OPINION

GIBBONS, Circuit Judge.

Plaintiff-appellant Roger Clemons sued multiple defendants under the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510 *et seq.* He alleged that an imposter impersonated him in a phone call to BellSouth Mobility, persuaded BellSouth to fax his cellular phone records to the imposter, and then shared the records with others. The district court granted summary judgment in favor of defendants. Assuming without deciding that the fax transmission constituted an electronic communication protected by the ECPA, the district court concluded that the imposter's receipt of the fax did not constitute an illegal "interception" under the statute because it was received on a fax machine the imposter uses in the ordinary course of his business. Alternatively, the district court held that even if the imposter's receipt of the records was an "interception," Clemons would still not be entitled to relief because the statute provides that it is not unlawful for a person to intercept an electronic communication "where such person is a party to the communication," unless the interception is done for the purposes of committing a criminal or tortious act. We affirm the judgment of the district court on the basis that the party receiving the intercepted communication was a party to the communication without deciding whether the interceptor received the communication on a device used by him in the ordinary course of business.

I.

Defendant Randall Waller and his wife were engaged in divorce proceedings. To assist him with the divorce, Waller re-

of Michigan, sitting by designation.

tained Karl Hall, a licensed private investigator and the owner of defendant Meridian Resources & Investigation (Meridian Resources). Waller directed Hall to investigate several individuals working for Waller's wife, including Clemons.[1] Waller instructed Hall that the investigation should include securing the private billing records associated with Clemons's cellular telephone number, 601–838–4002. In response to Waller's request, Hall contacted defendant Action Research Group ("ARS") and requested that it obtain copies of Clemons's cellular phone billing records. ARS agreed to perform the service. Mike Lee, an agent of ARS, then contacted Clemons's cellular phone service provider, BellSouth Mobility, and represented that he was Clemons. While thus impersonating Clemons, Lee requested copies of Clemons's cellular phone billing records for a four-month period. BellSouth transmitted those requested records to Lee via his facsimile machine.

After obtaining the records, ARS sold copies of Clemons's billing records to Hall and Meridian Resources for the price of $748.25. Hall and Meridian Resources, in turn, provided the records to Waller and billed him for obtaining those records. Waller paid the bill in full.

Clemons filed the instant action on February 28, 2000. He alleged that defendants violated his rights under the federal wiretap statute, as modified by the ECPA, 18 U.S.C. §§ 2510 et seq., by surreptitiously securing his cellular phone billing records. Clemons argued first that the impersonator's receipt of the faxed billing records constitutes an impermissible "interception" under 18 U.S.C. § 2511(a). Clemons also argued that defendants ARS, Hall and Meridian are liable under 18 U.S.C. § 2511(c) for intentionally disclosing the contents of the intercepted fax and that defendant Waller is liable under § 2511(d) for obtaining the intercepted information. Waller, in turn, filed a motion against Clemons, requesting sanctions against him and his attorney pursuant to Fed.R.Civ.P. 11, 28 U.S.C. § 1927, and the district court's equitable powers.

The district court granted summary judgment in favor of defendants and declined to award sanctions against Clemons. Clemons appealed the grant of summary judgment, and Waller appealed the denial of sanctions. Clemons subsequently dismissed his appeal to the extent that it concerns Waller and ARS, and Waller dismissed his cross-appeal for sanctions. Thus, the only two remaining defendants/appellees are Hall, the private investigator who instructed ARS to secure plaintiff's phone records, and Meridian Resources, Hall's corporation.[2]

1. Plaintiff Roger Clemons is a private investigator. Carol Waller hired Fowlers Profile Links, Inc., a private investigation company, to perform several investigative tasks for her. Fowlers Profile Links in turn subcontracted with Clemons, a licensed private investigator, to examine and copy various public records in Frankfort, Kentucky. This trip to Kentucky was Clemons's only association with the divorce proceedings, according to his complaint.

2. In a letter received by this Court on August 4, 2003, Hall, now proceeding pro se, requested sanctions against Clemons and his attorney. It is unclear from Hall's letter whether he intends to appeal the district court's denial of Waller's motion for sanctions or whether Hall intends to raise the issue of sanctions for the first time on appeal. In either case, Hall's request must be denied. First, Hall does not have standing to appeal the district court's denial of Waller's motion. To have standing to appeal a district court's order, the appellant must have been injured by that order. Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 333, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) ("Ordinarily, only a party aggrieved by a judgment or order of a district court may exercise the statutory right to appeal therefrom."). Waller originally filed the motion

## II.

This court reviews a district court's order granting summary judgment *de novo. Nguyen v. City of Cleveland,* 229 F.3d 559, 562 (6th Cir.2000). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When reviewing a motion for summary judgment, the court must view all of the evidence and any inferences that may be drawn from that evidence in the light most favorable to the nonmoving party. *Nguyen,* 229 F.3d at 562.

The federal wiretap statute, the ECPA, "criminalizes and creates civil liability for intentionally intercepting electronic communications without a judicial warrant." *Adams v. City of Battle Creek,* 250 F.3d 980, 982 (6th Cir.2001). The Act provides:

> Except as otherwise specifically provided in this chapter any person who—
>
> (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication; ...
>
> (c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; ....

> shall be punished as provided in [18 U.S.C. § 2511(4)(a)] or subject to suit as provided in [18 U.S.C. § 2511(5) and 18 U.S.C. § 2520].

18 U.S.C. § 2511(1). The statute defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). "Electronic, mechanical, or other device" is defined to mean "any device or apparatus which can be used to intercept a wire, oral, or electronic communication *other than*—(a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business ..." 18 U.S.C. § 2510(5) (emphasis added). The statute further provides:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral or electronic communication where such person is a party to the communication ... unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of

for sanctions against Clemons and the denial of the motion injured him, not Hall. Therefore, Hall does not have standing to appeal the district court's denial of Waller's motion. Moreover, as an appeal, Hall's request would be untimely since it was submitted more than thirty days after the denial of Waller's motion for sanctions. *See* 28 U.S.C. § 2107(a).

In the event Hall is asserting a claim for sanctions for the first time on appeal, we will not consider the claim because it does not warrant deviating from the general rule that issues presented for the first time on appeal are not properly before this court. *Foster v. Barilow,* 6 F.3d 405, 407 (6th Cir.1993). The Sixth Circuit will consider issues for the first time on appeal only in exceptional cases or when doing so is required to prevent a plain miscarriage of justice. *Id.* Hall's claim does not present an exceptional case, nor does refusing to consider the claim produce a plain miscarriage of justice.

**440**

the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d).

Clemons alleges that Hall and Meridian are liable under 18 U.S.C. § 2511(a) and (c) for intercepting the fax transmission from BellSouth.[3] The district court assumed without deciding that the fax transmission was an electronic communication protected by the statute. Appellees do not contest that assumption. The district court then granted summary judgment on two grounds: first, on the ground that Lee's fax machine was subject to the "ordinary course of business" exception provided by 18 U.S.C. § 2510(5), and second, on the ground that Lee was subject to the "party to the communication" exception provided by 18 U.S.C. § 2511(2)(d). The district court correctly analyzed the "party to the communication" exception and properly applied it to this case. We affirm the district court's judgment on this basis alone and therefore need not consider the issue of whether the receipt of the communication over Lee's fax machine met the "ordinary course of business" exception.

Where an individual is a "party to the communication," not acting under color of law, it is not unlawful under the ECPA for the individual to intercept the communication, "unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). A "party to the communication" is a person participating in the communication. The communication at issue is the transmission of Clemons's cellular phone records. That communication involved Lee, impersonating Clemons, and BellSouth Mobility. Lee requested Clemons's records and BellSouth Mobility transmitted those records to Lee. Lee was thereby a "party to the communication" when he received the fax transmission. Thus, to demonstrate a violation of the ECPA, Clemons must show that defendants received his billing records for the purpose of committing either a crime or a tortious act.

Alleged violations of the ECPA itself cannot constitute the additional crime or tort under § 2511(2)(d). *See Thomas v. Pearl,* 998 F.2d 447, 451 (7th Cir.1993) (presuming that an allegation that defendant broke only the wiretapping law itself

**3.** Clemons characterizes the question presented as "[w]hether it violates the [ECPA] for an imposter to acquire an individual's telephone records by using fraud and deceit to induce the transmission of these records by a telephone company, via facsimile, to the imposter by leading the telephone ... company to believe that the records were being requested by, and would be received by, the legitimate subscriber." (Appellant's Brief at 3.) This phrasing implies that the nature of the contents of the facsimile transmission (Clemons's phone records) is relevant—that is, that the fact that it was a *telephone* company sending *telephone* records makes this suit cognizable under the federal wiretap act. This fact is immaterial. The only relevant question is whether an unlawful interception occurred. The nature of the contents of the transmission has no bearing on this question whatsoever.

Appellees respond to Clemons's argument by stating that "[i]t has not been alleged, nor can it be shown[,] that any of the defendants knew the contents of any communication between the plaintiff and any other person." (Appellees' Brief at 9.) They argue that "it has been held that a list of telephone numbers is only a record that contact was attempted between one phone and another. The identity of the number is not the communication itself[,] as the U.S. Supreme Court has recognized." (Appellees' Brief at 13, citing *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979).) This argument also misapprehends the issue. Clemons's complaint does not allege that defendants intercepted Clemons's cell phone calls. Rather, the complaint alleges that defendants intercepted a fax transmission intended for Clemons.

does not destroy the § 2511(2)(d) exception). At most, Clemons alleges that the imposter committed fraud by impersonating him in communications with BellSouth. However, he does not claim that the alleged interception was undertaken *for the purpose of* committing fraud. Rather, the alleged fraud was already complete at the time the alleged interception took place. Because Lee was a party to the communication and because Clemons failed to allege that defendants intercepted the fax transmission for the purpose of committing any crime or tort (other than violating the federal wiretap act itself), 18 U.S.C. § 2511(2)(d) relieves defendants from liability under the ECPA.

Clemons's argument for reversal is that "Lee's use of fraud and deceit vitiated his claim to be a party to the communication." (Appellant's Brief at 10.) Clemons, however, cites no cases involving the ECPA or any other wiretapping statute to support this argument. Rather, he points out that fraud in the inducement voids a contract, that employing fraud in obtaining sexual intercourse is a criminal act, and that a police officer who uses fraud to obtain a search warrant is not entitled to qualified immunity. We do not dispute that utilizing false pretenses to secure information is proscribed in certain areas of the law. Notably, Congress has elsewhere imposed civil and/or criminal liability on individuals who obtain information about another by false pretenses. *See, e.g.,* 5 U.S.C. § 552a(i)(3) (imposing liability for utilizing false pretenses to secure another's record from an administrative agency); 15 U.S.C. § 1681q (imposing liability for utilizing false pretenses to obtain information about another from consumer reporting agencies); *Id.* § 6821 (imposing liability for utilizing false pretenses to obtain information about another from financial institutions); 49 U.S.C. § 30307 (imposing liability for utilizing false pretenses to obtain

information about another from the National Driver Register). However, Clemons fails to cite any authority for the proposition that pretending to be someone else prevents an individual from being a "party to the communication" under 18 U.S.C. § 2511(2)(d).

Other circuits, on the other hand, have determined that impersonating an intended recipient of a communication does not violate the federal wiretap act. For example, in *United States v. Pasha*, 332 F.2d 193 (7th Cir.1964), the Seventh Circuit considered a situation in which two FBI agents, while executing a search warrant, answered a ringing telephone on the premises, listened to the callers, and pretended to be the intended recipient of the calls. The Court held that no interception had occurred: "[T]here was no tampering with the established means of communication. Indeed the officer was the immediate party to the call. The bettor intended his words to reach the officer, albeit the bettor thought he was someone else. Thus the officer did not 'intercept' a message while it was en route to another; there was no other on the line." *Id.* at 198 (quoting *State v. Carbone*, 38 N.J. 19, 183 A.2d 1 (1962)). The Court also stated that impersonating the intended recipient of a communication did not give rise to liability:

> Although the callers in the instant case were unaware that they were not being heard by the intended receivers and some were even misled into believing they were talking to one or other of the defendants, the conversations between the callers and the agent cannot be said to have been intercepted. Interception connotes a situation in which by surreptitious means a third party overhears a telephone conversation between two persons. *We believe that impersonation of the intended receiver is not an interception within the meaning of the statute.*

*Pasha,* 332 F.2d at 198 (emphasis added). When amending the federal wiretap act in 1968 to its current state, Congress specifically mentioned *Pasha* in its discussions of the "party to the communication" provision. In discussing § 2511(2)(c), which is *in pari materia* with § 2511(2)(d) and differs from that provision only in that § 2511(2)(c) applies to persons acting under color of law, the Senate Judiciary Committee stated:

> Paragraph 2(c) provides that it shall not be unlawful for a party to any wire or oral communication ... to intercept such communication. It largely reflects existing law. Where one of the parties consents, it is not unlawful.... "[P]arty" would mean the person actually participating in the communication. (*United States v. Pasha,* 332 F.2d 193 (7th Cir.1964)).

S.Rep. No. 90–1097, at 93–94 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2182; *see also United States v. Campagnuolo,* 592 F.2d 852, 862–63 (5th Cir.1979) (stating that "it is clear from this passage that Congress intended to reaffirm the result in *Pasha*"). By citing *Pasha,* Congress strongly intimated that one who impersonates the intended receiver of a communication may still be a party to that communication for the purposes of the federal wiretap statute and that such conduct is not proscribed by the statute. Defendants' conduct arguably may give rise to liability under other statutes or the common law, but it is not a violation of the ECPA.

### III.

Because Lee was a "party to the communication" and Clemons has not alleged that any defendant was intercepting a communication for the purpose of committing a crime or tort other than those outlined in the ECPA, we affirm the district court's grant of summary judgment in favor of defendants on the basis of 18 U.S.C. § 2511(2)(d).