Broderick E. JONES, James M. Springfield, and Terance R. Smith, Plaintiffs,

v.

CITY OF JACKSON, Defendant.

No. 02–1048.

United States District Court, W.D. Tennessee, Eastern Division.

Dec. 5, 2003.

Randall Blake Tolley, Law Offices of Randall B. Tolley, Memphis, TN, for Plaintiffs.

John D. Burleson, Milton Dale Conder, Jr., Rainey, Kizer, Reviere & Bell, Jackson, TN, for Defendant.

# ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BREEN, District Judge.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs, Broderick E. Jones, James M. Springfield and Terance R. Smith, black males employed by the defendant, the City of Jackson (the "City"), filed a complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, on or about February 26, 2002 alleging racial discrimination and retaliation. Specifically, the plaintiffs averred that they suffered discrimination while assigned to the City police department's Gang Enforcement Team (the "Gang Unit" or "Unit"). On June 2, 2003, the defendant filed a motion for summary judgment as to all claims.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) provides that a

... judgment ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 601 (6th Cir.1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. at 1356. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. In this circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action." *Lord v. Saratoga Capital, Inc.,* 920 F.Supp. 840, 847 (W.D.Tenn.1995) (citing *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989)). The "judge may not make credibility determinations or weigh the evidence." *Adams v. Metiva,* 31 F.3d 375, 379 (6th Cir.1994).

## ANALYSIS

Prior to addressing the merits of the parties' arguments, the court deems it necessary, regretfully, to comment on the brief in response to the motion for summary judgment filed on behalf of the plaintiffs. In response to the defendant's statement of material facts, the plaintiffs offered conclusory statements that the facts were disputed. The brief then set forth "plaintiffs' facts," which numbered 402 and went on for 37 pages. For the most part, these "facts" consisted of statements lifted directly from the plaintiffs' depositions and were often not even pre-

sented in complete sentences. The space devoted to plaintiffs' entire arguments in support of their claims amounted to one page with respect to the discrimination allegations and one paragraph in connection with the retaliation claim. Nowhere did plaintiffs' counsel attempt to apply the law to the facts of this case, rendering the job of the court in ruling on the motion extremely, not to mention unnecessarily, difficult. Counsel for the plaintiffs is. reminded that it is not the role of the court to formulate his legal arguments for him.

■ Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race ...." 42 U.S.C. § 2000e–2(a)(1). The plaintiffs have alleged claims of disparate treatment, disparate impact and hostile environment. In a disparate impact case, the plaintiff must "prove that a particular employment practice, although neutral on its face, has produced a significant adverse effect on a protected group to which the plaintiff belongs. The plaintiff must first establish a prima facie case by identifying and challenging a specific employment practice, and then show an 'adverse effect' by offering statistical evidence 'of a kind or degree sufficient to show that the practice in question has caused the' adverse effect in question." *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 830 (6th Cir.2000) (internal citations omitted). On the other hand, "[d]isparate treatment occurs when an employer treats some employees less favorably than others because of race, religion, sex, or the like." *Huguley v. General Motors Corp.*, 52 F.3d 1364, 1370 (6th Cir.1995). The plaintiffs have completely failed to allege the existence of any facially neutral employment practice of the City that resulted in an adverse effect on black employees. Rather, the statements presented by the plaintiffs in support of their claims involve unequal treatment of blacks

by the police department. Thus, the court will treat the discrimination claims as based on disparate treatment. Furthermore, the court will not consider any claim by the plaintiffs concerning a hostile environment. The sole reference to a hostile environment claim in their response to the motion for summary judgment consists of the following statement: "The City of Jackson has maintained an environment hostile to blacks." Such a conclusory statement by counsel, with no supporting argument whatsoever, is not, in this court's view, sufficient to take this claim to trial. The court will also not consider any claim on the part of plaintiff Smith for constructive discharge, as the only mention of such a claim appears in the plaintiffs' "facts" section by way of the following unsupported, bald assertion: "Jones confirmed that [Smith] was constructively discharged and forced to leave the gang enforcement team and had no choice but to leave."

■ A plaintiff may withstand a motion for summary judgment in a Title VII case either by presenting direct evidence of discrimination or by presenting circumstantial evidence, utilizing the evidentiary framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), from which a jury could draw an inference of discriminatory motive. *See Seay v. Tennessee Valley Auth.*, 339 F.3d 454, 463 (6th Cir.2003).

As the plaintiffs have presented no direct evidence of intent to discriminate, this case must be analyzed according to the requirements set forth in *McDonnell Douglas/Burdine*. The plaintiffs may create an inference of discrimination by establishing a prima facie case, in which they must show that (1) they are members of a protected class; (2) they were subject to

an adverse employment action or were discharged; (3) they were qualified for their positions; and (4) they were replaced by persons outside the protected class. *Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 906 (6th Cir.2002); *see also McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. at 1824. In disparate treatment cases, the fourth element may be satisfied by a showing that similarly situated employees not belonging to a protected class were treated more favorably. *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir.2002), *reh'g and suggestion for reh'g en banc denied* (Oct. 2, 2002); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–83 (6th Cir.1992).

Once the plaintiff has established a prima facie case of discrimination, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. at 1824. If the employer carries its burden of production, the presumption raised by the plaintiff's prima facie case is rebutted. A plaintiff must then prove, by a preponderance of the evidence, that the employer's stated reasons for the employment action were a pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 518–19, 113 S.Ct. 2742, 2753–54, 125 L.Ed.2d 407 (1993). A plaintiff may show pretext by presenting evidence that the defendant's stated reason had no basis in fact, did not actually motivate the decision or was not sufficient to motivate the employer's action. *See Manzer v. Diamond Shamrock Chem. Co.* 29 F.3d 1078, 1084 (6th Cir. 1994), *reh'g and suggestion for reh'g en banc denied* (Sept. 22, 1994). The ultimate burden of persuasion remains at all times with the plaintiff. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

In order to prevail on a claim of retaliation, a plaintiff must demonstrate that (1) he was engaged in activity protected by Title VII; (2) his actions were known to the defendant; (3) subsequently, the employer took action adverse to the plaintiff; and (4) there was a causal connection between the plaintiff's activity and the actions of the defendant. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir.2000). Thus, adverse action on the part of the employer must be shown on claims for both discrimination and retaliation. With these principles in mind, the court will now address the issues raised by the defendant's motion for summary judgment as to plaintiffs' claims.

It is undisputed that the plaintiffs, all black males, are members of a protected class and, thus, satisfy the first prong of the prima facie case of discrimination. At this point, the court will consider the defendant's motion with respect to each individual plaintiff.

*Broderick Jones*

In the instant motion, the City argues that Jones did not suffer an adverse employment action and, therefore, cannot establish the second element of the prima facie claim of discrimination. In response, Jones submits that he was denied a quality patrol car, was not permitted to wear plain clothes, did not get a drug dog[1] or undergo narcotics training, received negative evaluations, and was required to pay his own cell phone costs. Jones also avers that he was reassigned to patrol in June of 2000 and that, after he and other black officers left the Gang Unit, the Unit was made "fully investigative," rendering its white officers "investigators." Furthermore, this plaintiff stated in his deposition that, although he was permitted to work at

---

**1.** There has been no allegation that assignment of a drug dog would have constituted a promotion.

a part-time night job while assigned to the Gang Unit, his supervisor in the patrol division refused to change his work hours in order to allow him to keep the job. The part-time position, which paid $17.00 per hour, was with Waffle House as a security guard. Jones must demonstrate that these actions constituted a materially adverse change in the terms of his employment.

■ An adverse employment action under the second element is a *materially* adverse change in the terms or conditions of plaintiff's employment caused by the employer's actions. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461–62 (6th Cir.2000). Thus, in order to be actionable, the adverse action must be sufficiently severe. *See Halloran v. Minnesota Old Northwest Agents Ltd. Partnership*, 58 F.Supp.2d 831, 841 (W.D.Tenn.1999).

> A materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Bowman*, 220 F.3d at 461–62. De minimis actions are not materially adverse and are not actionable. *Id.* at 462. In *Kocsis v. Multi–Care Management, Inc.*, 97 F.3d 876 (6th Cir.1996), the Sixth Circuit, in discussing this issue, noted that reassignment, a requirement that an employee sign an agreement with the employer as a condition of promotion, a negative public perception concerning a transfer or a particular job, a transfer to a position with different responsibilities, semantic changes in title, and the bruising of an ego did not,

without more, rise to the level of "materially adverse changes" in the terms of employment. *Kocsis*, 97 F.3d at 885–87. Courts in this Circuit have also found that a reprimand or an involuntary transfer, absent loss of pay or benefits, or change in duties, does not constitute a materially adverse change in employment. *See Akers v. Alvey*, 338 F.3d 491, 498 (6th Cir.2003); *Reid v. Madison County, Tenn.*, 173 F.3d 856, 1999 WL 196560, at *2 (6th Cir.1999); *Halloran*, 58 F.Supp.2d at 841. "An employee's subjective impressions as to the desirability of one position over another are not relevant." *Policastro*, 297 F.3d at 539.

In this case, Jones has pointed the court to no evidence that any of the actions he has enumerated resulted in a materially adverse change in his employment. *See Virostek v. Liberty Township Police Dep't/Trustees*, 14 Fed.Appx. 493, 503–04, 2001 WL 814933, at *6–7 (6th Cir.2001) (assignment to an older police vehicle and failure to receive certain equipment, praise for work and preferred shifts not adverse employment actions). Indeed, he acknowledged in his deposition that reassignment from the Gang Unit to patrol was a lateral move with no change in wages, benefits or rank. (Deposition of Broderick E. Jones at p. 88.) Even if the denial of permission to work the night job could be considered materially adverse, Jones has presented no evidence to suggest that similarly situated white officers in the patrol division were allowed to adjust their schedules in order to moonlight.

Summary judgment is also appropriate as to Jones' retaliation claim as he has failed to demonstrate that he engaged in any type of protected activity-the first prong of the prima facie case. "Protected activity" has been defined as "opposition to any practice rendered unlawful by Title VII, including making a charge, testifying,

assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. National Communications, Inc.,* 339 F.3d 376, 385 (5th Cir.2003), *reh'g and reh'g en banc denied* (Sept. 30, 2003) (citation omitted).

*James Springfield and Terance Smith*

 As was the case with plaintiff Jones, the City maintains that the remaining plaintiffs did not suffer a materially adverse employment action. In response, Springfield lists 177 separate items concerning discrimination and retaliation under the "Plaintiffs' Facts" heading in support of his claim, including resentment by Hallenback of Springfield's ability to develop informants, which led to her assisting white officers in doing so and at one point taking away this plaintiff's informants; Hallenback's directive to Springfield that he provide an affidavit for a search warrant based on information from an informant he didn't know to be reliable; Hallenback's placement of negative notations in his file and refusal to make him an investigator[2]; being screamed at by Hallenback for missing post-maintenance on a vehicle; negative evaluations prepared by Hallenback; his transfer to the patrol division; and other general unpleasantness. Terance Smith charges that Terry Dyer, a white officer with whom he was assigned, was given informants to cultivate while he was not and that he received negative notations in his file from Hallenback. Smith also averred that his request for transfer out of the Gang Unit was initially denied, although it was granted following a second request two days later. As was the case with respect to plaintiff Jones, these plaintiffs have utterly failed to point the court to any evidence indicating that any of the actions claimed were materially ad-

verse. Thus, their claims of discrimination and retaliation must fail.

For the reasons articulated herein, the defendant's motion for summary judgment is GRANTED. The Clerk is hereby directed to enter judgment on behalf of the defendant.

---

2. This plaintiff has not alleged failure to promote based on discrimination with respect to an investigator position. Nor has he offered evidence that failure to make him an investigator resulted in a change in pay or benefits.