**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0495n.06
Filed: August 14, 2008

No. 07-6237

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| THOMAS L. BLUME, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Western |
| JOHN E. POTTER, Postmaster General, | ) | District of Kentucky |
| | ) | |
| Defendant-Appellee. | ) | |

Before: COOK and GRIFFIN, Circuit Judges, and MARBLEY, District Judge.[*]

Algenon L. Marbley, District Judge.  On May 5, 2005, plaintiff-appellant Thomas Blume filed a complaint against defendant-appellee John E. Potter, Postmaster General of the United States (the "Postmaster General"), alleging employment discrimination on the basis of race, sex, disability, age, and retaliation.  At the summary judgment stage, however, Blume withdrew his race- and sex-discrimination claims after conceding that he failed to meet the administrative prerequisites for filing those claims in federal court.   The district court granted summary judgment in favor of the Postmaster General on the remaining claims and dismissed the case with prejudice.  For the following reasons, this Court **AFFIRMS** the district court's decision.

---

[*]Judge Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

## I.  BACKGROUND

Blume worked for the United States Postal Service from 1979 until he retired in January 2004.  Throughout his tenure with the Postal Service, Blume had a history of confrontations with his coworkers and supervisors.  In October 2002, Blume was disciplined for unsatisfactory work attendance by his supervisor, Brian Neiman.  Blume became upset.  He yelled and cursed at Neiman.  As a result of the incident, the Postal Service notified Blume of its intent to terminate him.

Blume was able to retain his job by entering into a "Last Chance Agreement" ("Agreement") with the Postal Service in October 2002.  The Agreement provided that Blume would be subject to immediate removal for any behavior comparable to the conduct that precipitated his initial Notice of Termination.  In addition, the Agreement provided that if Blume was unable to report to work, he was required to seek advance approval and submit documentation for all absences, regardless of whether the absence was covered by the Family and Medical Leave Act ("FMLA").[1]    The Agreement also required Blume to resign on the first date that he became eligible for retirement, January 31, 2004.

Four months after entering into the Agreement, the Postal Service claimed that Blume violated its terms by being absent from work on January 28, 2003, without prior approval.  Blume claims that he missed work to take his mother to the doctor, and that a day earlier he had called the

---

[1]The FMLA allows an employee to take unpaid leave for a serious health condition or to care for a sick family member. 29 U.S.C. § 2601 *et seq.*

office to obtain approval for his absence. Blume, however, has no recollection of whom he spoke with.

When Blume returned to work on January 29, 2003, his then supervisor, Mike Hartman, confronted him about being absent without prior approval and asked Blume to provide documentation to support his absence. Blume explained that his absence fell within the boundaries of the FMLA, and then became angry with Hartman when he was told that this did not matter in light of the Agreement. Blume yelled, cursed, and this time pounded his fists against a table.

Once again, the Postal Service sent Blume a notice of proposed removal on February 13, 2003. The notice outlined Blume's violation of the Agreement, including his angry outburst, his failure to obtain approval for leave from a supervisor, and his failure to provide documentation for his absence upon his return to work on January 29, 2003. Postal Service manager Ron Roberts, reviewed the notice and subsequently issued a Letter of Decision on February 26, 2003, officially terminating Blume, effective March 21, 2003. Prior to March 21, 2003, however, the Postal Service reversed its decision to terminate Blume. Instead, it allowed him to utilize his sick and annual leave up until his retirement took effect on January 31, 2004. Consequently, Blume was able to retire as if he had worked up until his retirement-eligibility date.

## II. JURISDICTION

Blume appeals the district court's grant of summary judgment in favor of the Postal Service. Appellate jurisdiction is proper under 29 U.S.C. § 1291.

## III.  STANDARD OF REVIEW

On appeal, a district court's grant of summary judgment is reviewed de novo.  *Miller v. Admin. Office of the Courts*, 448 F.3d 887, 893 (6th Cir. 2006).  Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993).  In response, the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.  In responding to a motion for summary judgment, however, the nonmoving party "may not rest upon its mere allegations . . . but . . . must set forth specific facts

showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex,* 477 U.S. at 324*; Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1995).

## IV. ANALYSIS

### 1. Disability

#### (a) Exhaustion

As a threshold matter, the Postal Service argues that Blume failed to meet the administrative prerequisites for filing a claim of disability discrimination in federal court. A plaintiff seeking to bring a claim of disability discrimination in federal court must first exhaust his administrative remedies. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006). This exhaustion requirement is not "overly rigid, nor should it 'result in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial pleading.'" *Id.* (quoting *EEOC v. McCall Printing Co.*, 633 F.2d 1232, 1235 (6th Cir. 1980)).

The district court and the Postal Service were correct in observing that Blume's EEO affidavit fails to claim explicitly disability discrimination; however, both ignore the fact that on the very first page of Blume's EEO complaint he checked the box indicating that disability discrimination was one of his claims. Also, next to the disability box, he specifically described his disability as being "mental-psychiatric." Further, in his EEO affidavit, Blume states that Postal Service management "knew that I was on medication which would affect the way I react during confrontations. . . [and that] [a]ll parties involved knew that I was seeing a doctor for depression."

- 5 -

This language, coupled with the disability-claim check mark on the EEO complaint, comfortably satisfies the non-exacting administrative exhaustion requirement for disability discrimination claims brought in federal court. Thus, the district court was correct to consider the merits of Blume's disability-discrimination claim.

### (b) Merits

The federal statute at issue, the Rehabilitation Act, provides in relevant part that:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).

In disability discrimination cases where no direct evidence of discriminatory intent exists, a plaintiff must demonstrate a genuine issue of material fact with respect to each element of his prima facie case. *Burns v. City of Columbus, Dep't of Pub. Safety*, 91 F.3d 836 (6th Cir. 1996). To establish a prima facie case under the Rehabilitation Act, Blume must prove: (1) that he is a person with a disability as defined by the Act; (2) that he is otherwise qualified; and (3) that he was subject to discrimination solely because of his handicap. *Doherty v. S. College of Optometry*, 862 F.2d 570, 573 (6th Cir. 1988).

The Act defines "a person with a disability" as any person who: (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment. 29 U.S.C.

§ 705(20)(B). In relevant part, the EEOC defines "substantially limits" as being "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(ii). Finally, "major life activities" are described as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. § 1630.2(I).

Blume is unable to make out a prima facie case because he has failed to put forth sufficient evidence to show that he has a disability, or that the Postal Service regarded him as having a disability. Blume claims that he is disabled due to an inability to communicate that is a result of anger management issues. Blume asserts three facts in support of his argument that he is disabled. First, Blume notes that he was prescribed Prozac and Depakote for depression. Second, Blume contends that the Postal Service required him to attend an employee assistance program for communication problems. Third, Blume argues that the Postal Service was clearly aware of his temper problems because it had previously warned him about prior temper outbursts. To support his assertion that inability to communicate can constitute a recognized disability, Blume relies on this Court's decision in *Kocis v. Multicare Management, Inc.*, 97 F.3d 876 (6th Cir. 1996).

We are not persuaded. In *Kocis*, we held that a plaintiff suffering from arthritis and multiple-sclerosis did not meet the definition of disabled because, by her own admission, her impairments did not limit her major life activities. *Id.* at 884. Similarly, Blume stated in his deposition that he

currently has trouble performing some of life's major activities, but that while he was working for the Postal Service he "could do anything." Without having had substantial limitations on his ability to perform life's major activities, Blume does not satisfy the definition of a disabled person under the Rehabilitation Act. Further, with respect to his first two assertions, the Supreme Court has ruled that "[i]t is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment." *Toyota Motor Mfg., Co., v. Williams*, 534 U.S. 184, 198 (2002). Accordingly, Blume's drug prescriptions and participation in employee assistance programs, without more, do not prove that he was disabled.

As stated in the Rehabilitation Act, if Blume cannot show that he was disabled, he must prove that the Postal Service regarded him as being disabled in order for his claim to go forward. 29 U.S.C. § 705(20)(B). The Supreme Court has ruled that an individual is regarded as disabled when: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 489 (1999). In either case, the covered entity must entertain misperceptions about the individual, namely, "it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Id*.

Blume offers no evidence that the Postal Service mistakenly believed that he had an impairment that substantially limited one or more of his major life activities. Blume simply rests

his argument on the fact that the Postal Service required him to attend an assistance program to improve his communication skills, and on the affidavit of a co-worker, Thomas Ballinger, who asserts that the Postal Service management knew of Blume's anger issues. Neither of these represents evidence that the Postal Service was under the impression that Blume had an impairment that substantially limited a major life activity. And again, the Postal Service would have no reason to believe that Blume has such an impairment because Blume himself openly represented that he was fully capable of performing any normal activity during his tenure with the Postal Service.

We, therefore, **AFFIRM** the district court's grant of summary judgment for the Postal Service on Blume's claim of disability discrimination.

## 2. Age

In order to establish an age-discrimination claim in the absence of direct evidence, a plaintiff must make out a prima facie case following the *McDonnell Douglas* burden-shifting analysis. *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 547 (6th Cir. 2004). Thus, Blume must show: (1) that he was at least forty years old at the time of the alleged discrimination; (2) that he was discharged; (3) that he was qualified for the position he held; and (4) that he was treated differently from those similarly situated employees under forty. *Id.*; *Blackwell v. Sun Elec. Corp.*, 696 F.2d 1176, 1180 (6th Cir. 1983).

It is undisputed that Blume satisfies the first two prongs of a prima facie case. And although the Postal Service makes a tepid argument that Blume rendered himself unqualified (the third prima facie requirement) by engaging in inappropriate behavior toward his supervisor, it stakes its case on

the assertion that Blume has failed to satisfy the fourth requirement in that he cannot provide any evidence of any similarly situated younger employees being treated differently. We agree.

A plaintiff can show that another employee was similarly situated by proving "that all of the relevant aspects of his employment situation were nearly identical to those of [the younger employee's] employment situation." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796. 802 (6th Cir. 1994) (internal citations omitted); *Ercegovich v. Goodyear Tire and Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). Blume compares his treatment to that of four co-workers: James Fentress, Jeff Jones, Kelly Jackson, and Alan Cole. All four comparisons fail. Fentress was over the age of forty at the relevant time period, and none of the other three was on a Last Chance Agreement or any other comparable probationary status. Blume makes no argument that his receipt of the Last Chance Agreement was itself unfair. Thus, without being able to show that similarly situated employees were treated differently, Blume cannot establish a prima facie case of age discrimination. The district court's grant of summary judgment for the Postal Service on Blume's claim of age discrimination is **AFFIRMED**.

### 3. Retaliation

To establish a prima facie case of retaliation under Title VII, a plaintiff must prove that: (1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there

was a causal connection between the protected activity and the adverse employment action or harassment. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000).

Blume initially contacted an EEO Counselor in August 2002, and argues that the Notice of Proposed Termination and the Agreement were retaliatory actions taken by the Postal Service in response to his exercise of protected activity. The Postal Service concedes that it was aware of Blume's protected activity, but argues that no adverse action occurred because Blume agreed to the retirement date and because the six month gap between his protected activity and the Notice of Proposed Termination does not demonstrate a causal connection.

The district court found for the Postal Service, holding that there was no adverse action taken because Blume consented to the terms of the Agreement, and that the existence of a six-month gap between the protected activity and the action taken was not enough on its own to prove causality. In support of its conclusion with respect to adverse action, the district court distinguished this case from those cited by Blume—*Cooper v. Nieman Marcus Group*, 125 F.3d 786 (9th Cir. 1997), and *Seisser v. Platz Flowers & Supply, Inc.*, 129 F.Supp.2d 1130 (N.D. Ill. 2000)—concluding that those cases concerned constructive discharge, whereas here Blume "agreed" to resign on his first eligible retirement date.

The district court erred in its conclusion that no adverse action was taken, but correctly found that Blume failed to demonstrate causality. In *Kocis*, this Court adopted the Seventh Circuit's definition of an adverse employment action by finding that a plaintiff must show that he received significantly diminished material responsibilities as a result of the action. *Kocis*, 97 F.3d at 886.

There, we found that a situation where a nurse was reassigned from her position as a nursing supervisor to a position as the head RN of a skilled-care unit did not constitute an adverse action because all material aspects of her responsibilities were the same, and tellingly, her rate of pay did not decrease. *Id.* In contrast to this case, the plaintiff in *Kocis* maintained her status as an at-will employee whose employment was of indefinite duration. Blume, however, went from having an indefinite employment term with the normal risks of termination, to having a finite employment term with a non-negotiable end date. While his day-to-day responsibilities remained the same, his position had materially changed after the Agreement because his days had become numbered. Technically, Blume had the ability to choose between ending his employment immediately, without reaching retirement eligibility, or working up to his first eligible retirement date, but this choice was illusory. Neither option provided Blume with the opportunity to remain an employee of the Postal Service indefinitely. The fact that he agreed to continue working for a limited period of time, instead of accepting immediate termination, does not discount the fact that an adverse action was taken against him.

Blume, however, fails to present any evidence of causality other than the six-month period between his protected activity and the adverse action, and thus cannot establish a prima facie case of retaliation. This Circuit has made it clear that "temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence." *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000). This is particularly the case where the defendant provides reasonable evidence of alternative causation. *Steiner v. Henderson*, 121 Fed.Appx. 622,

628 (6th Cir. 2005)(holding that the Defendant's convincing-alternative explanation for the conduct at issue was sufficient to defeat an allegation of causality based on temporal proximity alone). Blume's inability to provide any corroborating evidence is fatal to his claim of causality. Accordingly, the district court's grant of summary judgment in favor of the Postal Service on Blume's claim of retaliation is **AFFIRMED**.

## V. CONCLUSION

For the foregoing reasons, this Court **AFFIRMS** the district court's grant of summary judgment in favor of the Postmaster General on all claims.